**In re SABBATINO & CO., Inc.**

**CAMARDA v. HABERKORN.**

No. 352.

Circuit Court of Appeals, Second Circuit.

June 4, 1945.

Evans, Rees & Orr, of New York City (Fred H. Rees and William G. Walsh, both of New York City, of counsel), for appellant.

Chauncey H. Levy, of New York City (Sydney Basil Levy, of New York City, of counsel), for appellee.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

We think that crucial portions of the testimony did not receive adequate consideration by the Referee and the judge. The Referee's opinion and findings show that he ignored the uncontradicted testimony of Hoey's knowledge and belief concerning Sabbatino's mental condition during the three months before the shooting. He ignored the significance of the fact that, after Hoey and Sabbatino had discussed the matter of rates, Sabbatino had left the office again to visit the saloon. He also disregarded Hoey's earlier testimony, which Hoey admitted was correct, that, at the time of Sabbatino's conversation with Camarda, Sabbatino was drunk. The Referee stressed what Hoey believed, and centered his inquiry on the question whether there was negligence in not restraining Sabbatino åfter he had shot at the radiator. The judge did not consider the testimony which the Referee had ignored. The judge, too, emphasized the issue of negligence with reference to the failure to restrain Sabbatino after he first fired the gun; underscored Hoey's subjective reactions; and regarded as important Sabbatino's lack of animus towards Camarda because it showed no reason for apprehension ·by Hoey that Sabbatino would deliberately shoot Camarda.

As we view the evidence, there can be no doubt that a reasonable man, with Hoey's knowledge of Sabbatino's previous mental condition, as manifested by his previous conduct, and of his drunken state at the time when he asked for the gun, would have foreseen that it was reckless to allow Sabbatino to have possession of such a dangerous weapon.[1] The test, of course, is not what Hoey thought, but what a reasonable man would have thought.[2] And it is immaterial that such a man would not have foreseen the particular accident which occurred, for he would surely have foreseen that Sabbatino, armed with a loaded revolver, since he might ·discharge it accidentally, would be a potential menace to everyone in the company's office.[3]

On the facts thus viewed, we think the company was clearly negligent. It owed Camarda, an invitee, an affirmative duty to use due care to see to it that its premises were not in such condition as to put him in danger of physical harm.[4] The company breached that duty when Hoey, its principal managerial officer, failed to prevent Sabbatino from obtaining possession of the gun. It is therefore immaterial whether or not Sabbatino, when he shot Camarda, was acting within the scope of his employment.

We need not consider whether, as Sabbatino was a managerial officer, the company breached the duty to keep the premises safe through his possessing himself of the gun, when drunk, on the company's premises. Nor need we consider whether liability could rest on the ground that the company entrusted its gun to a person known to Hoey, its president, to be in such condition that it might reasonably have been foreseen that the gun might be used to injure third persons.[5]

Neither the Referee nor the judge found that Camarda was contributorily negligent or "assumed the risk."[5a] They could not justifiably have so found. Up to the time when Sabbatino received the

---

[1] We pay no attention to the evidence as to Sabbatino's previous use of the gun for purposes of intimidation.

[2] Mertz v. Connecticut Co., 217 N.Y. 475, 112 N.E. 166; The Germanic, 196 U. S. 589, 595, 596, 25 S.Ct. 317, 49 L.Ed. 610.

[3] See Lilly v. New York Cent. & .H. R. R. R. Co., 107 N.Y. 566, 575, 14 N.E. 503; Meisle v. New York Cent. & H. R. R. R. Co., 219 N.Y. 317, 320, 114 N.E. 347, Ann. Cas.1918E, 1081; Burrows v. Livingston-Niagara Power Co., 217 App.Div. 206, 216 N.Y.S. 516, affirmed 244 N.Y. 548, 155 N. E. 892; Munsey v. Webb, 231 U.S. 150, 156, 34 S.Ct. 44, 58 L.Ed. 162.

[4] Restatement of Torts, §§ 317, 341, 342, 343; Abbott v. New York Public Library, 263 App.Div. 314, 318, 319, 32 N.Y.S.2d

963; cf. Hall v. Smathers, 240 N.Y. 486, 148 N.E. 654.

[5] See Restatement of Torts, § 308; Kuchlik v. Feuer, 239 App.Div. 338, 267 N.Y.S. 256, affirmed 264 N.Y. 542, 191 N.E. 555; Gillner v. Wallace, 240 App. Div. 1003, 268 N.Y.S. 279; Golembe v. Blumberg, 262 App.Div. 759, 27 N.Y.S.2d 692.

[5a] The Referee made no finding to that effect. In his opinion he made the oblique · statement that, "if defendant were guilty of negligence in not doing something to restrain Sabbatino after he shot at the radiator, by the same token Camarda was guilty of contributory negligence". The judge commented that the Referee had made no finding of contributory negligence and therefore did not himself discuss that issue.

revolver, Camarda had no reason to be apprehensive. Once Sabbatino had the revolver, an emergency existed [6] in which it cannot be said that Camarda "assumed the risk" or was negligent because he did not try to depart; for an effort on his part to do so might well have directed to him the attention of the armed drunken man.

If, on the remand, it is necessary to hear further evidence on the issue of the amount of damages, the same Referee should conduct the hearing.[7]

Reversed and remanded.

---

[6] Restatement of Torts, § 470 (cf. § 296); Van Dusen v. State of New York, 112 Misc. 15, 18, 182 N.Y.S. 496; Kolanka v. Erie R. Co., 215 App.Div. 82, 85, 212 N.Y.S. 714.

[7] See Gulbenkian v. Gulbenkian, 2 Cir., 147 F.2d 173, 177.